FRANKLIN MEAD & another *vs.* MILTON FOX.

The terms and conditions of a public sale of land were, that warranty deeds should be given; that purchasers should have ten days to examine the title; that upon these terms, the vendor would execute deeds to purchasers; and that purchasers should make their payments, and take their deeds, within twelve days from the sale, provided the deeds were made according to the conditions of sale. A purchaser at such sale, having ascertained, by an examination of the records in the registry of deeds, that there was no record therein of any title in the vendor to the premises in question, but only a record of a mortgage thereof by the vendor to a person from whom he purchased the same, and that such person derived a part of his title from one whose wife did not appear by the record to have released her dower in the premises, refused to make payment and receive a deed. It was held, that the vendor was bound, by the terms of sale, to make a good title to the land, and that the purchaser could not be compelled to complete the purchase, upon receiving a warranty deed from the vendor.

It was held, also, that an offer made by the purchaser, after examining the title, to take the land if he might pay in notes of other parties, which offer was not accepted by the vendor, was no waiver of the right to refuse the deed.

THIS case was submitted to the court of common pleas, and by appeal to this court, upon an agreed statement of facts.

The plaintiffs advertised to sell, by public auction, sundry lots of land, lying in Dracut, upon the following terms and conditions : —

" Warranty deeds will be given; ten days will be allowed purchasers to examine the title and make the first payment; terms, one fourth cash, one fourth in three annual payments, and interest annually; the undersigned agree to execute deeds to purchasers on the above conditions."

The defendant became a purchaser at the sale, and thereupon signed a paper, of which the following is a copy : —

" We, the subscribers, severally acknowledge to have bid off the lots standing against our names, with the prices annexed, the number of feet being indicated on a plan used at the sale, &c., and agree to make our payments, and take our deeds, within twelve days from the day of sale, at the office of Knowles and Mead, if said deeds are made according to the conditions of sale."

The plaintiffs derived their title to the land in question from Daniel Adams, who conveyed the same to them, by a deed with warranty, on the 24th of May, 1848. The plaintiffs mortgaged the land back to Adams, by a deed of the same date, to secure about two thirds of the purchase-money. The deed to the plaintiffs was not recorded until the 14th of July, 1848

The mortgage was recorded on the 25th of May, 1848, and the mortgage and deed contained references from the one to the other. The mortgage was discharged on the 18th of July, 1848, and an entry made thereof in the registry, on the 19th of August following.

The title of Adams was derived in part from a mortgage of an undivided half of the premises to him by Porter Kimball, by a deed dated the 10th of February, 1837, and a foreclosure by Adams of the right to redeem the same. When the mortgage was made, the wife of the mortgagor did not release her right of dower in the mortgaged premises, and the mortgage was duly recorded without her signature. After it had been recorded, she executed the mortgage, in token of her release of dower in the premises, but the mortgage was never again recorded. Kimball's wife was still living.

Within ten days of the sale, the defendant caused the records in the registry of deeds to be examined, and received from the register a certificate dated July 1st, 1848, relative to the title of the land in question, of which the following is a copy : —

" That there was no record of any title in the plaintiffs to the premises in question, but there was on record a mortgage made by said Lapham and Mead to Daniel Adams of the premises, (describing the mortgage above named,) and that said Daniel Adams derived a part of his title from one Porter Kimball, and that it did not appear, that the wife of said Kimball had released her dower in the premises."

The defendant did not call at the office of Knowles and Mead, within twelve days of the sale, to make payment and take his deed ; but within ten days, a warranty deed in proper form was duly made and executed, of the premises bid off by the defendant, and ready to be delivered. After the expiration of the twelve days, the defendant went to the office of Knowles and Mead, and then made no objection to the title or deed. He said he had been trying to raise money to make payment, and that if the plaintiffs would take them, he would turn out good notes against other persons in payment. The notes being declined, the defendant said he would call again in a few days, and see to it. He called again, and the deed above mentioned was tendered to him. The defendant in-

quired, if they had a deed ready for him of the land free from incumbrances. Knowles answered, that they had not, but told the defendant, if he would leave his money with him, it should not be paid over to the plaintiffs, until the premises were cleared. The defendant declined to receive the deed upon these terms, but without assigning any reason for his refusal.

If competent evidence, it was agreed, that, at the sale, before the bidding commenced, the auctioneer said openly and publicly, though not in the hearing of the defendant: "The premises are subject to a mortgage, but it will be made perfectly clear."

*I. W. Beard,* for the defendant.

*J. G. Abbott* and *A. Mead, Jr.,* for the plaintiffs.

The opinion was delivered at the October term, 1851.

FLETCHER, J. By a reasonable and just construction of the contract between the parties, the plaintiffs were bound to make to the defendant a good and clear title to the land, in order to hold the defendant liable on his contract as a purchaser.

By the terms of the sale, ten days were allowed purchasers to examine the title. Purchasers could have no other object in examining the title, than to see if the plaintiffs could make a good title; and there could be no object whatever in ascertaining whether or not the plaintiffs could make a good title, unless they were bound to make such title, and the purchaser was entitled to have a good and clear title made to him, in order to bind him to the performance of his contract of purchase.

The purchaser was allowed time to examine the title, to see if he could get what he had purchased, and whether the plaintiffs actually had and could convey what they had undertaken to sell. The defendant was not bound to take the land and pay for it, unless the plaintiffs would give him a good and clear title to it. Now, upon examining the title, the defendant ascertained, and such clearly was the fact, that the plaintiffs could not convey a good and clear title. The land was incumbered, and the defendant was not bound to take and pay for an incumbered estate. That was not his contract

Mead & another *v.* Fox.

The tender to the defendant of a warranty deed in due form was of no avail, and will not by any means enable the plaintiffs to maintain this action. Cases were cited at the argument, in which it was held, that a tender of a warranty deed by the vendor was a performance on his part, so as to bind the purchaser, though the vendor could not make a clear title; and that by the contract between the parties, the purchaser had contracted not for a clear title, but only for a warranty deed. *Aiken* v. *Sanford,* 5 Mass. 494; *Gazley* v. *Price,* 16 Johns. 268; *Tinney* v. *Ashley,* 15 Pick. 546. But this is not such a case. The defendant did not contract for a deed only; he contracted for and purchased the land.

The plaintiffs undertook, not to make a deed merely, but to make to the defendant a good and clear title to the land; and as the deed, when tendered and refused, could not convey such title, this action cannot be maintained.

It was further maintained in the argument, that if the defendant had originally a right to a good and clear title, yet that he had waived that right. But the case discloses no facts which would constitute such a waiver. The proposition by the defendant to turn out notes was not accepted, and can therefore have no effect. There are no facts in the case to show that the defendant, at any time, agreed to take a deed, which would not convey a clear title, or that he had in any way relinquished his right to a good title to the land, according to the original contract.

The oral evidence referred to in the case, if admitted, surely could not avail the plaintiffs, or affect the construction which the court have put on the written contract. It is said, that the auctioneer stated : " The premises are subject to a mortgage, but it will be made · perfectly clear." This clearly goes to strengthen the construction of the contract, that the plaintiffs were to make a good and clear title. It could be of no importance, that the purchaser was told, that the estate was subject to a mortgage, when it appeared, that he was told at the same time that it should be made perfectly clear. Judgment must be entered, on the facts, for the defendant.